183 Cal.App.4th 1096 (2010)
107 Cal. Rptr. 3d 847
THE PEOPLE, Plaintiff and Respondent,
v.
BRENDA LOUISE LANDON, Defendant and Appellant.
No. A123779.
Court of Appeals of California, First District, Division Two.
April 13, 2010.
*1098 Matthew Zwerling and L. Richard Braucher, under appointments by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and René A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
LAMBDEN, J.
On August 14, 2008, defendant pleaded guilty to driving under the influence (DUI) with a blood-alcohol level greater than 0.08 percent (Veh. Code, § 23152, subd. (b)); she admitted four prior DUI *1099 convictions. Subsequently, defendant was arrested for another DUI and, on September 18, 2008, she pleaded guilty to a DUI with prior convictions within 10 years (Veh. Code, §§ 23152, subd. (a), 23550, subd. (a)) and admitted committing the crime while released on her own recognizance (Pen. Code, § 12022.1, subd. (b)).[1] The court held a sentencing hearing for both of these cases and sentenced defendant to state prison for a total of four years eight months.
On appeal, defendant urges us to remand the matter to the trial court for a new sentencing hearing. Defendant contends the lower court erred and violated her due process rights under the Fourteenth Amendment when it found her statutorily ineligible for probation under section 1203, subdivision (e)(4). We will not remand for a new sentencing hearing because defendant failed to establish prejudice.
While this appeal was pending, the Legislature amended section 4019, which changed the calculation of presentence conduct credit. Defendant filed a motion in the trial court requesting that her presentence conduct credits be calculated in accordance with the amended statute. The lower court denied this request, finding that the amended statute did not apply retroactively. Defendant appealed from this ruling.
We note that the Third Appellate District has held that the amended statute applies retroactively (People v. Brown (2010) 182 Cal.App.4th 1354 (Brown)), while the Fifth Appellate District has held that it applies prospectively only (People v. Rodriguez (2010) 182 Cal.App.4th 535 [105 Cal.Rptr.3d 345] (Rodriguez)). We agree with the reasoning of the Third Appellate District and therefore hold that the amended statute applies retroactively.

BACKGROUND

The Two Arrests and Pleas
At 9:49 p.m., on November 21, 2007, an officer received a dispatch report regarding a female driving a white van and a possible DUI. The officer spotted the white van, which was traveling at an extremely high rate of speed and without lit headlights. The officer saw the van proceed through two intersections without stopping or slowing. The officer had to drive approximately 70 miles per hour to come close enough to stop the van.
Defendant was the driver of the white van. As defendant got out of the vehicle, the officer saw her almost fall over. Defendant had an "extremely *1100 unsteady gait." The officer noticed that the left side of defendant's nose had blood from a scratch and defendant had a cut on the right side of her forehead. Defendant was too intoxicated to respond to the officer's question about what had happened. The officer had defendant perform field sobriety tests. She refused to submit to a preliminary alcohol screening test. Dispatch advised the officer that defendant was on probation for a DUI and that she had a suspended driver's license. The officer arrested defendant. She was transported to a medical center where a blood sample was taken and she had a blood-alcohol content of 0.26 percent.
On March 13, 2008, an information was filed in case No. SCUKCRCR0781676, which charged defendant with two counts of DUI with prior convictions within 10 years (Veh. Code, §§ 23152, subds. (a) & (b), 23550, subd. (a)), and one count of misdemeanor driving while privileges were suspended (Veh. Code, § 14601.2, subd. (a)). The information alleged defendant had a blood-alcohol content of 0.15 percent or higher (Veh. Code, § 23578) and was driving 20 miles per hour over the maximum speed limit (Veh. Code, § 23582, subd. (a)).
On April 8, 2008, defendant pleaded not guilty to all charges and denied all allegations.
At 8:55 p.m., on June 28, 2008, an officer received a report of a woman driving a beige Mazda recklessly northbound on Main Street in Willits. The report stated that the driver, later identified as defendant, was swerving in and out of lanes of traffic and tailgating.
An officer stopped defendant's car as she was driving from a gas station. When defendant got out of her vehicle and approached the officer, the officer smelled alcohol and marijuana on defendant's breath and person. The officer also noticed that defendant's eyes were red and watery and that she was slurring her speech. Defendant told the officer that she had numerous joint and skeletal problems making her unable to perform the field sobriety tests. She submitted to an in-field preliminary alcohol screening that showed a blood-alcohol content of 0.10 percent. The officer arrested defendant.
On July 21, 2008, an information in case No. SCWLCRCR0885031 was filed. This information charged defendant with one count of DUI with prior convictions within 10 years (Veh. Code, §§ 23152, subd. (a), 23550, subd. (a)), one count of transporting marijuana (Health & Saf. Code, § 11360, subd. (a)), and one count of misdemeanor driving while privileges were suspended (Veh. Code, § 14601.2, subd. (a)). The information alleged that the crimes were committed while defendant was released on her own recognizance (Pen. Code, § 12022.1, subd. (b)).
*1101 On August 14, 2008, pursuant to a negotiated disposition in case No. SCUKCRCR0781676, defendant pleaded guilty to a DUI with a blood-alcohol level greater than 0.08 percent (Veh. Code, § 23152, subd. (b)), and admitted four prior DUI convictions.
On September 18, 2008, pursuant to a negotiated disposition in case No. SCWLCRCR0885031, defendant pleaded guilty to a DUI with prior convictions within 10 years (Veh. Code, §§ 23152, subd. (a), 23550, subd. (a)), and admitted committing the crime while released on her own recognizance (Pen. Code, § 12022.1, subd. (b)).

Defendant's Competency
The matter was set for sentencing but, on December 2, 2008, defense counsel expressed doubt regarding defendant's competency under section 1368. The court suspended proceedings and appointed two psychologists to evaluate defendant's competence. On December 17, 2008, the court reviewed the psychologists' reports and found defendant legally competent and reinstated criminal proceedings.

The Probation Report
The probation officer filed her report and recommendation. The probation officer recommended that the court deny probation and sentence defendant to a total of five years. The probation report set forth the following convictions of defendant in Louisiana: soliciting for prostitution in February 1989, "access device fraud" in 1992, forgery in 1993, and issuing worthless checks in 1993.
Defendant's current probation officer spoke with Felix Indest, defendant's probation officer in Louisiana. According to Indest, defendant had a history of substance abuse and prostitution.
With regard to criteria affecting probation, the California probation officer stated that the circumstances of the crimes as compared to other instances of the same crime were more serious because of defendant's high blood-alcohol level and the speed she was traveling in her vehicle. The circumstances in aggravation, according to the probation report, were defendant's numerous prior convictions as an adult, which increased in seriousness. Additionally, defendant was on probation when the crime was committed and defendant's prior performance on probation had been unsatisfactory. Defendant appeared remorseful but the probation officer warned that defendant's DUI history was likely to persist and that she would continue to endanger others if not imprisoned. With regard to circumstances in mitigation, the probation officer *1102 noted that defendant suffered from an alcohol addiction, which possibly reduced her culpability for the crime.
The probation officer noted that defendant had pleaded guilty to her fifth DUI. The probation officer stated that defendant had been provided ample opportunity to address her alcohol problems, but had failed to do so and continued to be a serious danger to the community. At the time of the probation report, defendant had a pending matter in the court for her sixth DUI. The probation officer stated that defendant had four prior felony convictions in Louisiana and was presumptively ineligible for probation, except in unusual cases where the interest of justice would be served. The probation officer stated that she did "not see any circumstances in this case, which would justify this case as unusual."

The Sentencing Hearing
Defendant testified at the sentencing hearing and promised never to drink alcohol again and requested probation conditioned on a long-term residential treatment program. Defense counsel argued that the court did not have reliable evidence that two of the convictions in Louisiana would have been punishable as felonies in California within the meaning of section 1203, subdivision (e)(4). Further, even if defendant had two or more prior felony convictions, defense counsel argued that probation was proper in this case.
At the end of the hearing on January 6, 2009, the court found defendant statutorily ineligible for probation; it did not find that there were sufficient unusual circumstances to grant probation. The court sentenced defendant to a total of four years eight months for both cases. The court awarded a total of 289 days' credit for time served (193 actual days in custody, plus 96 conduct credit days under former § 4019, subds. (b) & (c)).
On January 15, 2009, defendant filed a timely notice of appeal.

Presentence Credits
On January 25, 2010, section 4019 was amended to provide for one day of work time credit and one day of conduct credit for each four-day period in custody. On February 9, 2010, defendant filed a motion under section 1237.1 in superior court, requesting an order to recalculate her presentence credits in accordance with amended section 4019. Defendant argued that the amended version of the statute entitled her to an increase in presentence credits. After a hearing on February 19, 2010, the court denied the motion.
*1103 On February 23, 2010, defendant filed a notice of appeal from the denial of her request for presentence credits. Defendant requested permission from this court to file a supplemental brief to address this issue and we granted this request on March 3, 2010.

DISCUSSION

I. Denial of Probation

Defendant contends that the lower court's refusal to grant her probation based on section 1203, subdivision (e)(4)[2] violated her due process rights under the Fourteenth Amendment. The trial court found that she was presumptively ineligible for probation because she had two convictions in Louisiana. Defendant maintains that the two convictions in another state have to be punishable in California as a felony and the evidence did not show that defendant's four convictions in Louisiana constituted a felony if committed in California. Defendant concedes that her prior forgery conviction in Louisiana qualified as a felony under California law, but maintains that the record is insufficient to show that any of the other three convictions met the statutory requirements. She asserts that we should remand the matter for a new sentencing hearing.
The People do not challenge defendant's argument that the record does not establish that any of the convictions in Louisiana, other than the forgery conviction, satisfies the statutory requirements under section 1203, subdivision (e)(4). The People contend, however, that even if the statutory requirements were not met, defendant cannot prevail because she cannot demonstrate prejudice from any sentencing error. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
We agree with the People that defendant cannot demonstrate prejudice. Had the trial court not found defendant presumptively ineligible for probation as the result of her two prior convictions in Louisiana, the trial court would still undoubtedly have terminated probation and sentenced her to state prison. The trial court was presented with overwhelming evidence that defendant's conduct while on probation was unsatisfactory. Defendant's criminal history consisted of six misdemeanor California convictions and four Louisiana convictions. At the time of defendant's arrest in case *1104 No. SCUKCRCR0781676, defendant was on two grants of summary probation from Lake County for two DUI convictions.
The probation officer stated in her report that defendant "is appearing before the court, having pled guilty to a fifth felony [DUI]. She has been given several opportunities to address her alcohol problems, but they have had little effect on her. She continues to be a serious danger to the community. The defendant has a pending matter in superior court for her sixth [DUI] matter. It appears that the defendant has not realized society will not accept this type of behavior."
(1) Rather than provide evidence to show prejudice, defendant claims the sentencing hearing did not comport with the most basic of procedural safeguards and maintains that the information considered by the court was not reliable. (See People v. Peterson (1973) 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187] [probation hearings do not require the same procedural safeguards as trials on the issue of guilt, but "an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are fundamentally unfair"]; see also People v. Arbuckle (1978) 22 Cal.3d 749, 754-755 [150 Cal.Rptr. 778, 587 P.2d 220] ["Reliability of the information considered by the court is the key issue in determining fundamental fairness."]; People v. Eckley (2004) 123 Cal.App.4th 1072, 1080 [20 Cal.Rptr.3d 555] ["A court's reliance, in its sentencing and probation decisions, on factually erroneous sentencing reports or other incorrect or unreliable information can constitute a denial of due process."].) Defendant argues that a sentence cannot be based on false information. (See U.S. v. Weston (9th Cir. 1971) 448 F.2d 626, 634 [the defendant denied the information contained in the presentencing report and the Ninth Circuit held that the hearsay information in the report was of so little value that the trial court should not have relied upon this information when imposing the maximum term].)
Defendant's argument lacks merit because most of the evidence presented at the sentencing hearing was reliable. Although the evidence may not have satisfied the requirements of section 1203, subdivision (e)(4), the evidence did show defendant would be unable to comply with the conditions of probation in the future. This evidence was both reliable and overwhelming. Indeed, when sentencing defendant to the midterm for case No. SCUKCRCR0781676, the court commented on defendant's repeated offenses and stated, "This is a borderline aggravated [case]."
We decline to order a remand because it is not reasonably probable the trial court would impose a different sentence. (People v. Coelho (2001) 89 Cal.App.4th 861, 889-890 [107 Cal.Rptr.2d 729] [where the trial court was *1105 unaware of the breadth of its discretion, no reversal and remand for resentencing is necessary as the remand would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence]; see also People v. Fuhrman (1997) 16 Cal.4th 930, 945-946 [67 Cal.Rptr.2d 1, 941 P.2d 1189] [no remand required where record shows that it is unlikely that the trial court would strike the prior conviction in a three strikes case].) Defendant gave the court no reason to believe that she would comply with the conditions of her probation in the future.

II. Presentence Credit

(2) Under section 2900.5, a person sentenced to state prison for criminal conduct is entitled to credit against the term of imprisonment for all days spent in custody before sentencing. (§ 2900.5, subd. (a).) In addition, section 4019 provides that a criminal defendant may earn additional presentence credit against his or her sentence for willingness to perform assigned labor (§ 4019, subd. (b)) and compliance with rules and regulations (§ 4019, subd. (c)). These forms of presentence credit are called, collectively, conduct credit. (People v. Dieck (2009) 46 Cal.4th 934, 939, fn. 3 [95 Cal.Rptr.3d 408, 209 P.3d 623].)
When defendant was sentenced in January 2009, under the version of section 4019 then in effect, conduct credit could be accrued at the rate of two days for every four days of actual presentence custody. (Former § 4019.) In October 2009, the Legislature passed Senate Bill No. 18 (2009-2010 3d Ex. Sess.) (Senate Bill 18). Senate Bill 18 "addresses the fiscal emergency declared by the Governor by proclamation on December 19, 2008." (Stats. 2009, 3d Ex. Sess., ch. 28, § 62.) Its provisions provide various means by which prison populations may be reduced, thereby easing prison overcrowding and lowering the cost. This bill, among other things, amended section 4019, effective January 25, 2010, to provide that any person who is not required to register as a sex offender and is not being committed to prison for, or has not suffered a prior conviction of, a serious felony as defined in section 1192.7 or a violent felony as defined in section 667.5, subdivision (c), to accrue conduct credit at the rate of four days for every four days of presentence custody.
(3) Defendant contends that the amendment applies retroactively and, because her conviction was not final on January 25, 2010, the amendment applies to her. "[A]bsent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal . . . ." (People v. Babylon (1985) 39 Cal.3d 719, 722 [216 Cal.Rptr. 123, 702 P.2d 205].) "`[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for *1106 petitioning for a writ of certiorari in the United States Supreme Court has passed. [Citations.]' [Citation.]" (People v. Vieira (2005) 35 Cal.4th 264, 306 [25 Cal.Rptr.3d 337, 106 P.3d 990].)
The People argue that the amendment does not apply retroactively and therefore the lower court properly calculated defendant's conduct credit based on former section 4019.
This issue has recently been addressed by the Third Appellate District in Brown, supra, 182 Cal.App.4th 1354 and the Fifth Appellate District in Rodriguez, supra, 182 Cal.App.4th 535. The Third Appellate District held that the amended statute applies retroactively, while the Fifth Appellate District held that it applies prospectively only. For the reasons discussed below, we agree with the reasoning of the Third Appellate District.
(4) Section 3 provides that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." Thus, "`[a] new statute is generally presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise. [Citation.]'" (People v. Alford (2007) 42 Cal.4th 749, 753 [68 Cal.Rptr.3d 310, 171 P.3d 32].)
Here, the 2010 amendment to section 4019 contains no express language that it has retroactive application. However, the Supreme Court created an exception to section 3 in In re Estrada (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (Estrada). In Estrada, the court considered whether a statute mitigating the punishment for escape should be applied retroactively to a defendant who escaped before the effective date of the mitigating statute; the statute was silent on the issue of retroactivity. (Id. at p. 744.) In deciding that the statute should be applied retroactively, the court explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (Id. at p. 745.) Thus, "where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (Id. at p. 748.)
*1107 Senate Bill 18 does not have a saving clause and, as already stated, no express statement of intent. Under Estrada, if the amendment is a reduction in punishment, we must presume retroactive application, at least as to cases not yet final on the effective day. The Brown court held that Senate Bill 18 is a reduction of punishment and therefore has a retroactive application. (Brown, supra, 182 Cal.App.4th at p. 1365.) It cited People v. Hunter (1977) 68 Cal.App.3d 389 [137 Cal.Rptr. 299] (Hunter), where the court held that an amendment to section 2900.5, which permitted an award of presentence custody credits, had retroactive application despite the legislation containing no express statement of retroactive or prospective application. (Hunter, supra, at p. 392.)
The People here, as they did in Brown, argue that Hunter, supra, 68 Cal.App.3d 389 is distinguishable because Hunter involved actual custody credits rather than conduct credits. The latter's purpose is to create an incentive for good behavior while the objective for actual credits is to reduce the remaining punishment imposed. This distinction, however, is not significant. As the Brown court pointed out, an amendment to a statute involving conduct credits was applied retroactively in People v. Doganiere (1978) 86 Cal.App.3d 237 [150 Cal.Rptr. 61]. The Doganiere court concluded, "[I]t must be presumed that the Legislature thought the prior system of not allowing credit for good behavior was too severe." (Doganiere, supra, at p. 240.)
Here, the People argue that the reasoning in People v. Doganiere is unsound and attempt to bolster this assertion by citing to In re Stinnette (1979) 94 Cal.App.3d 800 [155 Cal.Rptr. 912]. In Stinnette, the court considered an amendment to section 2931 under the Determinate Sentencing Act (DSA), which allowed prisoners to earn conduct credits but restricted application of the amendment to time served after the effective date. (Stinnette, supra, at p. 803.) The DSA expressly provided for prospective application and therefore the issue before the court was whether this prospective application violated equal protection. (Stinnette, supra, at p. 804.) The court concluded that it did not. (Id. at pp. 805-806.) The amendment to section 4019, unlike the amendment in Stinnette, does not specify the Legislature's intent regarding its retroactive or prospective application and therefore Stinnette is not relevant to determining the Legislature's intent when amending section 4019.
The People also cite Rodriguez, supra, 182 Cal.App.4th 535, a recent Fifth Appellate District decision, which concluded that the amendment to section 4019 does not apply retroactively. The Fifth Appellate District in Rodriguez concluded that Estrada concerned a reduction in the penalty for a specific offense and therefore the Legislature must have determined that the penalty for that offense was too severe. (Rodriguez, supra, at pp. 540-541.) In *1108 contrast, the Rodriguez court emphasized that the amendment to section 4019 increases the rate at which a criminal defendant can earn conduct credit and does not reflect a determination that a penalty for a particular crime is too severe. (Rodriguez, supra, at pp. 541-542.) Furthermore, the Rodriguez court reasoned that conduct credit should not apply retroactively because its purpose is to provide an incentive for good behavior while incarcerated. (Id. at pp. 542-543.)
(5) We do not agree with the Rodriguez court that the present case is significantly different from the situation in Estrada. In Estrada, the amendment at issue lessened the punishment for a group of offenders. Here, the amendment to section 4019 reduces the punishment for a subset of prisoners who have good conduct in jail while awaiting trial. We do not deem it significant that the reduction in time is tied to conduct rather than to a specific offense.
Further, we agree with the Brown court that it may be reasonably inferred from section 59 of Senate Bill 18, that the Legislature intended a retroactive application. Section 59 of Senate Bill 18 reads: "The Department of Corrections and Rehabilitation shall implement the changes made to this act regarding time credits in a reasonable time. However, in light of limited case management resources, it is expected that there will be some delays in determining the amount of additional time credit to be granted against inmate sentences resulting from changes in law pursuant to this act. An inmate shall have no cause of action or claim for damages because of any additional time spent in custody due to reasonable delays in implementing the changes in the credit provisions of this act. However, to the extent that excess days in state prison due to delays in implementing this act are identified, they shall be considered as time spent on parole, if any parole period is applicable." (Stats. 2009, 3d Ex. Sess., ch. 28, § 59.) As the Brown court pointed out, if the Legislature did not intend retroactive application, it would not have been concerned with "delays in determining the amount of additional time credits to be granted against inmate sentences resulting from changes in law pursuant to this act." (Stats. 2009, 3d Ex. Sess., ch. 28.)
(6) Here, the sentencing court originally awarded defendant 289 days of presentence custody credit (193 actual days in custody plus 96 work and conduct credits). We conclude that amended section 4019 applies retroactively[3] and therefore defendant is entitled to custody credits totaling 385 days (193 actual days in custody plus 192 work and conduct credits).

*1109 DISPOSITION
The denial of probation is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting an additional 96 days of presentence custody credit for a total custody credit of 385 days, and to forward a certified copy of said amended abstract to the Department of Corrections and Rehabilitation. As amended, the judgment is affirmed.
Kline, P. J., and Richman, J., concurred.
NOTES
[1] All further unspecified code sections refer to the Penal Code.
[2] Section 1203, subdivision (e)(4) provides: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons:" "Any person who has been previously convicted twice in this state of a felony or in any other place of a public offense which, if committed in this state, would have been punishable as a felony."
[3] We need not consider defendant's equal protection argument.