Filed 1/13/21  P. v. Hautman CA6
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047735 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 19CR02568) |
| v. | |
| CURTIS ANTHONY HAUTMAN, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Curtis Anthony Hautman pleaded guilty to bringing a controlled substance into a jail (Pen. Code, § 4573)[1] and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a)).  The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including that he serve 111 days in jail.  The court granted defendant 111 days of custody credits, consisting of four actual days, four days' conduct credit, and 103 days "on the monitor."  The trial court denied defendant's request for conduct credit for the 103 days that he had an "ankle monitor."

On appeal, defendant initially contended that he is entitled to 103 days of conduct credit for the time he purportedly spent on an electronic monitoring program on home

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

detention prior to sentencing. On September 18, 2020, we reversed the judgment and directed the trial to determine whether defendant participated in an electronic home detention program under section 1203.018 and, if so, to calculate defendant's conduct credit for time spent in that program.

Subsequently, on September 30, 2020, the Governor signed Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950), which amended section 1203.1, by limiting the probation period for most felony convictions to two years. (§ 1203.1, subd. (a), as amended by Stats. 2020, ch. 328, § 2.) The amendment became effective on January 1, 2021. (Cal. Const., art. IV, § 8, subd. (c).)

Upon a petition by defendant, the California Supreme Court granted review (case No. S265014) and transferred the matter to this court with directions to vacate our decision and to reconsider the cause in light of Assembly Bill 1950. We vacated our prior decision by separate order.

Having reconsidered the cause, we will again reverse the judgment. We will direct the trial court to determine: (1) whether section 1203.1, subdivision (a) as amended effective January 1, 2021, applies retroactively to defendant and, if so, the appropriate remedy; and (2) to the extent the amount of conduct credit is not thereby rendered moot, whether defendant participated in an electronic home detention program under section 1203.018 and, if so, to calculate defendant's conduct credit for time spent in that program.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Offenses*

On the night of April 21, 2019, a police officer conducted a traffic stop on defendant and determined that there was an active warrant for his arrest. In searching defendant before placing him in the police car, the officer found a pipe used for ingesting methamphetamine. Upon being booked into the county jail, defendant was searched more thoroughly. A substance that appeared to be methamphetamine was found in his

2

sock. The substance tested presumptive positive for methamphetamine and weighed 10.9 grams.

**B. *The Charges, Pleas, and Sentencing***

Defendant was charged with bringing a controlled substance into a jail (§ 4573; count 1) and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a); count 2).

On December 31, 2019, defendant pleaded guilty to both counts after the trial court indicated that it would place him on probation with "credit for time served and no additional jail time" over the prosecutor's objection. The court immediately suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including that he serve 111 days in jail. The court granted defendant 111 days of custody credits, consisting of four actual days, four days' conduct credit, and 103 days "on the monitor." Defendant requested that the court award "[section] 4019 credits for the ankle monitor pursuant to" *People v. Yanez* (2019) 42 Cal.App.5th 91 (*Yanez*), but the court denied the request. The court stated, "My reading of the statutes is different than the courts. And I'm confident that [defendant] is not coming back."

### III. DISCUSSION

**A. *Conduct Credit***

#### 1. The Parties' Contentions

Defendant contends that based on equal protection principles and *Yanez*, *supra*, 42 Cal.App.5th 91, the trial court erred in denying his request for 103 days' conduct credit for the time he spent on electronic monitoring before sentencing. In *Yanez*, the appellate court held that, because defendants are statutorily eligible for conduct credit if they are placed on electronic home detention *after* imposition of sentence (see §§ 1203.016, 4019, subd. (a)(7)), it violates equal protection to deny eligibility for

3

conduct credit for time spent on electronic home detention *prior* to sentencing (see § 1203.018). (*Yanez*, *supra*, at p. 93.)

The Attorney General contends that, assuming *Yanez* was correctly decided, there is no evidence in the record to show that defendant meets the requirements for obtaining presentence conduct credit under *Yanez*.

In analyzing whether defendant is entitled to additional presentence conduct credit, we first summarize the record regarding defendant's custody status prior to sentencing. We then set forth general legal principles regarding electronic home detention and custody credits before turning to the substance of the parties' contentions.

### 2. Defendant's Presentence Custody Status

The record reflects the following regarding defendant's custody status between his arrest on or about April 21, 2019, and his sentencing on December 31, 2019.

On April 24, 2019, defendant appeared in court. The minute order from the hearing states that defendant was "remanded into custody until next appearance, Bail amount: $5,000." The minute order further states that "[p]retrial [i]ntensive [s]upervised [r]elease is granted," and that defendant was to be "[r]elease[d] to Pre-Trial for intensive supervised O/R, Home confinement with EMP."

The minute orders for subsequent hearings on May 8 and June 21, 2019, indicate that defendant remained out of custody, having been "[r]elease[d] to Pre-Trial for intensive supervised O/R, Bail $5,000.00."

On June 28, 2019, defendant failed to appear at a hearing. The minute order indicates that the trial court revoked defendant's release on his own recognizance and issued a bench warrant.

On July 18, 2019, defendant appeared in court, and the bench warrant was recalled. The court reinstated defendant's "[p]retrial intensive supervised release." The minute order from the hearing, consistent with earlier minute orders, indicates that defendant was "[r]elease[d] to Pre-Trial for intensive supervised O/R, Bail $5,000.00."

4

Sometime thereafter, it appears that the trial court again revoked defendant's release on his own recognizance based on a "Pretrial Services report" alleging defendant's noncompliance. A bench warrant was issued.

On August 16, 2019, defendant appeared in court and the bench warrant was recalled. The court ordered a representative from "Pretrial Service" to be present at the next court date to address defendant's alleged noncompliance. The court also reinstated defendant's "[i]ntensive [s]upervised OR." The minute order from the hearing, consistent with earlier minute orders, indicates that defendant was "[r]elease[d] to Pre-Trial for intensive supervised O/R, Bail $5,000.00."

On August 20, 2019, defendant and a representative from "Pretrial Services" appeared in court. After hearing from both, the trial court ruled that defendant could "remain on intensive supervised own recognizance." Consistent with earlier minute orders, the minute order from this hearing indicates that defendant was "[r]elease[d] to Pre-Trial for intensive supervised O/R, Bail $5,000.00."

On September 13, 2019, a hearing was held during which the trial court was informed that defendant "remain[ed] hospitalized." Upon motion by one of the parties to "modify [defendant's] release status to remove the monitor," the court granted the motion and modified defendant's "[i]ntensive pretrial release with GPS" to "pretrial supervision with no monitor." The minute order from the hearing states that defendant was "[r]elease[d] to Pre-Trial for supervised O/R with standard terms."

The minute orders for subsequent hearings until the date of sentencing on December 31, 2019, continue to indicate that defendant was "[r]elease[d] to Pre-Trial for supervised O/R with standard terms."

5

### 3.  General Legal Principles Regarding Electronic Home Detention and Custody Credits

#### a.  *Electronic home detention under sections 1203.016 and 1203.018*

Section 1203.016 "governs home detention *postsentencing*.  It authorizes counties to create electronic home detention programs in which certain inmates may be placed 'during their sentence,' under specified conditions, 'in lieu of confinement in a county jail or other county correctional facility or program.'  (*Id.*, subd. (a).)"  (*Yanez*, *supra*, 42 Cal.App.5th at p. 94, italics added.)

In contrast, section 1203.018, applies to defendants in an electronic home detention program *prior to sentencing*.  Section 1203.018 authorizes "the board of supervisors of any county" to "offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program" if specified statutory conditions are met.  (*Id.*, subd. (b); see also *id.*, subd. (a).)  "The statute applies to 'inmates being held in lieu of bail.'  [Citation.]  It has [also] been construed to apply when a pretrial detainee is required to submit to home confinement in a local electronic monitoring program as a condition of a reduction in bail.  [Citation.]"  (*Yanez, supra*, 42 Cal.App.5th at p. 93; accord, *People v. Raygoza* (2016) 2 Cal.App.5th 593, 599-601 (*Raygoza*).)

The conditions of electronic home detention under sections 1203.016 and 1203.018 are "substantially similar."  (*Yanez*, *supra*, 42 Cal.App.5th at p. 94.)  For example, under section 1203.018, similar to section 1203.016, the participant in the program must "consent in writing to participate and shall agree in writing to comply with the rules and regulations of the program, including, but not limited to, all of the following:  [¶]  (1) The participant shall remain within the interior premises of the

participant's residence during the hours designated by the correctional administrator.[2] [¶] (2) The participant shall admit any person or agent designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of the detention. [¶] (3) The electronic monitoring may include global positioning system devices or other supervising devices for the purpose of helping to verify the participant's compliance with the rules and regulations of the electronic monitoring program. The electronic devices shall not be used to eavesdrop or record any conversation, except a conversation between the participant and the person supervising the participant to be used solely for the purposes of voice identification. [¶] (4) The correctional administrator in charge of the county correctional facility from which the participant was released may, without further order of the court, immediately retake the person into custody if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home detention, if the person fails to remain within the place of home detention as stipulated in the agreement, if the person willfully fails to pay fees to the provider of electronic home detention services, . . . or if the person for any other reason no longer meets the established criteria . . . ." (§ 1203.018, subd. (d)(1)-(4); see § 1203.016, subd. (b)(1)-(4).) Further, "[w]henever the peace officer supervising a participant has reasonable cause to believe that the participant is not complying with the rules or conditions of the program, . . . the peace officer may, under general or specific authorization of the correctional administrator, and without a warrant of arrest, retake the person into custody." (§ 1203.018, subd. (f); see § 1203.016, subd. (c).)

---

**2** " 'Correctional administrator' means the sheriff, probation officer, or director of the county department of corrections." (§ 1203.018, subd. (k)(1); see also § 1203.016, subd. (h).)

**b.** *Custody credit for actual time in electronic home detention*

A defendant is entitled to credit for time spent in custody, including time in electronic home detention. Specifically, section 2900.5 provides that "[i]n all felony and misdemeanor convictions, . . . when the defendant has been in custody, . . . all days of custody of the defendant, including . . . credited to the period of confinement pursuant to Section 4019, and *days served in home detention pursuant to Section 1203.016 or 1203.018*, shall be credited upon his or her term of imprisonment . . . ." (*Id.*, subd. (a).) " '[T]erm of imprisonment' includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence." (*Id.*, subd. (c).)

**c.** *Conduct credit for postjudgment electronic home detention*

In addition to actual custody credit under section 2900.5, "section 4019 . . . offer[s] prisoners in local custody the opportunity to earn 'conduct credit' against their sentences for good behavior." (*People v. Brown* (2012) 54 Cal.4th 314, 317, fn. omitted.) Presentence conduct credit encourages " ' "minimal cooperation and good behavior by persons temporarily detained in local custody before they are convicted, sentenced, and committed . . . ." ' [Citations.]" (*People v. Dieck* (2009) 46 Cal.4th 934, 939.) Section 4019 generally provides that a defendant may earn conduct credit at a rate of two days for every two days spent in local custody. (§ 4019, subds. (b), (c) & (f).)

Section 4019 applies in various circumstances, including "[w]hen a prisoner participates in a program pursuant to Section 1203.016 . . . ." (§ 4019, subd. (a)(7).) Although section 4019 expressly authorizes conduct credit for defendants participating in a *postsentencing* electronic home detention program under section 1203.016, section 4019 does *not* expressly address defendants participating in a *presentencing* electronic home detention program under section 1203.018.

#### d. *People v. Yanez* (2019) 42 Cal.App.5th 91

In *Yanez*, the appellate court held that denying eligibility for conduct credit for time spent on electronic home detention *prior* to sentencing (see § 1203.018), but making conduct credit available to defendants who are placed on electronic home detention *after* imposition of sentence (see §§ 1203.016, 4019, subd. (a)(7)), violates equal protection. (*Yanez*, *supra*, 42 Cal.App.5th at p. 93.) The trial court in *Yanez* had "imposed home detention subject to electronic monitoring as a condition of reducing [the defendant's] bail from $480,000 to $100,000. By the time of his sentencing hearing, [the defendant] had spent 555 days on electronic home detention, in a program authorized by Alameda County." (*Id.* at p. 94.) The trial court granted the defendant credit for his 555 days of home confinement (see § 2900.5, subd. (a)). (*Yanez*, *supra*, at p. 94.) The defendant argued that he was also entitled to presentence conduct credit under equal protection principles because postsentencing home detainees were eligible for conduct credit under section 4019. (*Yanez*, *supra*, at p. 94.) The trial court rejected the defendant's request for presentence conduct credit.

The appellate court in *Yanez* concluded that there was "no legitimate, much less a compelling, reason for treating people participating in an electronic monitoring program on home detention while awaiting trial and sentencing differently for purposes of conduct credits than someone serving a sentence in an electronic monitoring program. Under the relevant statutes, both are subjected to similarly restrictive conditions and both are avoiding spending time in jail or other local custody." (*Yanez*, *supra*, 42 Cal.App.5th at p. 100.) In reaching this conclusion, the appellate court in *Yanez* relied on *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*). In *Sage*, the California Supreme Court "addressed an analogous disparity" under former law between convicted felons who were denied conduct credit for *pretrial* jail time, and convicted felons who served *no* jail time before sentencing but were statutorily entitled to conduct credit against their full prison sentence. (*Yanez*, *supra*, at p. 99.) In *Sage*, " '[i]t [was] the distinction between the

9

detainee/felon and the felon who serves no presentence time that raises equal protection problems.' " (*Yanez*, *supra*, at p. 99, quoting *Sage*, *supra*, at p. 507.)

## 4. Analysis

Defendant contends that based on equal protection principles and *Yanez*, *supra*, 42 Cal.App.5th 91, the trial court erred in denying his request for 103 days' conduct credit for the time he spent on electronic monitoring before sentencing.

The Attorney General contends that, assuming *Yanez* was correctly decided, there is no evidence in the record to show that defendant met the requirements for obtaining presentence conduct credit under *Yanez*. According to the Attorney General, there is no evidence that defendant "was released, either in lieu of bail or with a reduction in his bail, to a home detention program at all, much less one statutorily authorized under section 1203.018." The Attorney General argues that, "[t]o the contrary, the record shows that [defendant] posted $5,000 bail, and that he was released on his own recognizance." Further, regarding the references in the record to "[h]ome confinement with EMP" and defendant being on supervised release, the Attorney General contends that it is "unclear if it refers to a statutorily authorized program as contemplated by section 1203.018" or that the "conditions enumerated under section 1203.018 were met." Regarding the 103 days that the court awarded for defendant's actual time "on the monitor," the Attorney General argues that "there is no authority to support a conclusion that [defendant] was entitled to custody credits while out of custody on his own recognizance."

In reply, defendant contends that there is "no evidence" that he posted bail. According to defendant, the record "unambiguously shows that [he] was ordered confined at home in lieu of posting $5,000 bail" and that he "was placed on the electronic monitoring program in lieu of posting $5,000 in bail." Further, "[o]nly when [he] sought a modification, which the court granted on September 13, 2019, was he [no] longer required to wear the electronic monitor." Regarding the Attorney General's argument

that defendant's home confinement while wearing "an electronic G.P.S." might not be a program that complies with section 1203.018, defendant contends that the Attorney General "should bear the burden" on this issue.

On appeal, "[w]e must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error – it will not be presumed. [Citation.]" (*People v. Garcia* (1987) 195 Cal.App.3d 191, 198.) In seeking presentence conduct credit for his time "on the monitor," defendant must establish that his participation in that monitoring program met the requirements and conditions of section 1203.018. (See *Raygoza*, *supra*, 2 Cal.App.5th at p. 601 ["the focus is properly on whether the placement met certain custodial conditions and standards" under section 1203.018].)

Defendant thus has the burden on appeal to show that he is entitled to an additional 103 days' conduct credit. As we have explained, a defendant is entitled to custody credit for actual time on electronic home detention prior to sentencing under section 1203.018 (§ 2900.5, subd. (a)), and such a defendant is also eligible for conduct credit (*Yanez*, *supra*, 42 Cal.App.5th at p. 93).

In this case, the parties dispute whether the record is sufficient to establish that defendant's time "on the monitor," as characterized by the trial court, constituted participation in an electronic home detention program under section 1203.018.

On the one hand, the record does not reflect whether the board of supervisors of Santa Cruz County authorized an electronic home detention program pursuant to section 1203.018 (see *id.*, subd. (b)) and, if so, whether defendant's time "on the monitor" was pursuant to that program. (Cf. *Raygoza*, *supra*, 2 Cal.App.5th at p. 600 [appellate court found "no dispute that appellant was enrolled in the county's electronic monitoring program," "[n]or [was] there any dispute that appellant's electronically monitored confinement was subject to the conditions described in section 1203.018"]; see also *id.* at

11

p. 602.)  The meaning of the references to $5,000 bail in the various minute orders is also unclear.

On the other hand, section 2900.5, subdivision (a) authorizes credit for "days served in home detention pursuant to Section . . . 1203.018."  To the extent the trial court's award of 103 days for time "on the monitor" was pursuant to this subdivision, it would reflect a determination by the trial court that defendant's time "on the monitor" met the requirements of section 1203.018.  We also observe that when defendant requested conduct credit pursuant to *Yanez* at sentencing, the prosecutor never objected on the ground that defendant's time "on the monitor" did not meet the requirements of section 1203.018.

In view of (1) the lack of clarity in the record regarding the factual question of whether defendant's time "on the monitor" was pursuant to an electronic home detention program under section 1203.018, (2) the trial court's ambiguous statement that it was denying defendant's request for conduct credit because its "reading of the statutes is different than the courts," and (3) the parties' agreement that a remand may be necessary for the trial court to make the requisite factual determinations, we will remand the matter to the trial court to determine whether defendant participated in an electronic home detention program under section 1203.018 and, if so, to calculate defendant's conduct credit for the time spent in that program (see *Yanez*, *supra*, 42 Cal.App.5th at p. 93).

**B.  *Probation Period***

After our prior opinion was filed, Penal Code section 1203.1 was amended to provide that felony defendants may be placed on probation "for a period of time not exceeding two years."  (*Id.*, subd. (a), as amended by Stats. 2020, ch. 328, § 2, eff. Jan. 1, 2021.)  This two-year probation limit does not apply to specified offenses, including violent felonies (§ 667.5, subd. (c)), certain theft-related offenses, and offenses that include specific probation lengths within its provisions.  (§ 1203.1, subd. (m)(1), (2).)

In supplemental briefing, defendant contends that the amendment limiting probation to two years applies retroactively to his case. He argues that none of the exceptions to the two-year probation limit applies to him, and that the trial court should be directed to reduce his probation term from three years to two years.

The Attorney General contends in supplemental briefing that the amendment limiting probation to two years does not apply retroactively to defendant. To the extent the amendment does apply retroactively, the Attorney General argues that the matter should be remanded to the trial court "to utilize its discretion in deciding whether to impose a two-year probation term" and to allow "the People . . . the opportunity to either agree to the new term or to withdraw from the plea agreement."

In view of our determination that the matter must be remanded regarding defendant's entitlement to conduct credit, the trial court shall also consider in the first instance whether section 1203.1, subdivision (a) as amended effective January 1, 2021, applies retroactively to defendant and, if so, the appropriate remedy.

## IV. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to determine:

(1) whether Penal Code section 1203.1, subdivision (a) as amended effective January 1, 2021, applies retroactively to defendant and, if so, the appropriate remedy; and

(2) to the extent the amount of conduct credit is not thereby rendered moot, whether defendant participated in an electronic home detention program under Penal Code section 1203.018 and, if so, to calculate defendant's conduct credit for time spent in that program.

13

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
ELIA, J.

***People v. Hautman***
**H047735**